IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERNEST FLORES, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. **5:11-cv-998** |
| | § | |
| SAN ANTONIO STATE HOSPITAL and | § | |
| TEXAS DEPARTMENT OF STATE | § | |
| HEALTH SERVICES, | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices, i.e., discrimination on the basis of ethnicity, Hispanic; and to provide appropriate relief to Ernest Flores who was adversely affected by such practices.  Ernest Flores also alleges that he was subjected to unlawful retaliation from Defendant after he complained of discriminatory behavior (participation in a protected activity) under Title VII.  Mr. Flores further alleges that he was forced to work in hostile work environment in which he was subjected to unwelcome pervasive and severe harassment of a racial and sexual nature that affected a term, condition or privilege of his employment, and that Defendant knew or should have known of the harassment yet failed to take prompt remedial action.  All of these actions and omissions, Mr. Flores asserts, were in violation of Chapter 21 of the Texas Labor Code.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked as a Federal question pursuant to 28 U.S.C. §§451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3)  of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Texas, San Antonio Division.

3.      At all relevant times, Defendant San Antonio State Hospital has continuously been engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §2000e-(b), (g), and (h).

<strong>PARTIES</strong>

4.      Plaintiff, Ernest Flores is a former employee of Defendant San Antonio State Hospital and is currently a resident of San Antonio, Bexar County, Texas.

5.      Defendant San Antonio State Hospital is a Domestic For-Profit Corporation, authorized to do business in Texas, and may be served with process by serving the DSHS Commissioner:  David Lakey, MD, 1100 West 49th Street, Austin, Texas 78756-3199.

<strong>ADMINISTRATIVE REMEDIES EXHAUSTED</strong>

6.       More than thirty days prior to the institution of this lawsuit, Ernest Flores filed his charge with the Commission alleging violations of Title VII of the Civil Rights Act of 1964, as amended, by San Antonio State Hospital. All conditions precedent to the institution of this lawsuit has been fulfilled.

7.      The Equal Employment Opportunity Commission received a timely charge filed by the Plaintiff on March 10, 2010, alleging that he was discharged from a maintenance position with the Defendant in retaliation for acts made unlawful under Title VII.  Pursuant to Section 706 of Title VII, 42 U.S.C section 2000e-5, the EEOC investigated

the charge, found reasonable cause to believe that Plaintiff's allegation of retaliation was true and issued a Letter of Determination.  Thereafter, the EEOC attempted unsuccessfully to achieve a voluntary resolution of the charge through conciliation, and subsequently referred the matter to the Department of Justice who issued a Letter of Right to Sue.

## STATEMENT OF FACTS AND CLAIMS

8.      Over the course of his employment, from June 16, 2009 to April 16, 2010, Mr. Flores was subjected to Defendant's unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a) and 2000e-3(a). To wit, as set forth below, Mr. Flores alleges that he was subjected to retaliation because he engaged in a protected activity defined by Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

9.      On or about April 19, 2009, Mr. Flores was hired as a HVAC Mechanic I by Defendant, San Antonio State Hospital.  Mr. Flores is a Master HVAC Mechanic.  He holds a government HVAC Master license, Purall Certification and is EPA Certified.

10.     Mr. Flores is a Hispanic American man.

11.     While employed with Defendant Mr. Flores' supervisors were Manual Peralez, Assistant Plant Manager, Ruben Acebedo, Plant Manager, and Joseph Rudolph, Fire and Safety Supervisor.

10.     On or about June 16, 2009, Mr. Flores confidentially reported to Mr. Acebedo and Mr. Peralez that another employee, Mr. Gary Leinneweber, had unnecessarily condemned an air conditioning unit; an act that cost the State approximately $100,000.00.

12.     Immediately after Mr. Flores made this report, Mr. Leinneweber began to verbally attack and harass Mr. Flores.  Mr.  Leinneweber started calling Mr. Flores a "snitch", "wetback", "nigger", "homo", "fag" and "nigger-lover".

13.     After that, word quickly spread through the department that Mr. Flores had "snitched" on Mr. Leinneweber inciting other employees to begin harassing and taunting Mr. Flores.  Fellow employees Chris Ibarra and Sam Garcia made overt racial slurs and sexual comments to Mr. Flores.

14.     Mr. Ibarra regularly referred to Mr. Flores a "fag" and he told others that Mr. Flores was a "fag" and a "wetback lover."  Mr. Ibarra also told Mr. Flores that "the people around here have sex with each other and that it was easy to have sex whenever he (Mr. Flores) wanted".  Mr. Ibarra also made very vulgar comments to Mr. Flores and told Mr. Flores that he would "suck his dick."

15.     Frank Ramos, another co-worker, also sexually harassed Mr. Flores.  Mr. Ramos made it a point of grabbing his crotch in front of Mr. Flores and made sexually suggestive gestures and comments while threatening Mr. Flores with physical harm for being a "snitch".   Mr. Ramos also told Mr. Flores that other employees would kill him and that "the Mafia is looking for you".

16.     Another co-worker, Ismael Vasquez, also escalated matters and threatened Mr. Flores with physical harm for being a "snitch".

17.     On or about February 2, 2010, Mr. Flores filed an internal employment discrimination complaint with the Health and Human Services Enterprise against Gary Leinneweber and because of the persistent racial and sexual harassment he was experiencing at the workplace.  An investigation commenced.  Yet, feeling adverse pressure by management and the HHSC Civil Rights representative, Sylvia Mejia, Mr. Flores decided to drop his claim on March 30, 2010.

18.     On or about February 5, 2011, Mr. Flores was leaving the shop for the day when Mr. Ismael Vasquez approached Mr. Flores.  Mr. Vasquez pulled a knife out of his pocket and waived it violently in front of Mr. Flores.  Mr. Flores reported the assault to Mr. Peralez.  Mr. Flores also filed a report with the San Antonio Police Department.

19.     On February 16, 2011, as Mr. Flores was walking in the employee parking lot, Mr. Vasquez drove his truck deliberately towards Mr. Flores as if he was going to run him over but then turned and averted hitting Mr. Flores.  When Mr. Vasquez got out of his truck he laughed at Mr. Flores.

20.     On February 19, 2010, Mr. Flores filed another internal employment discrimination complaint with the Health and Human Services Enterprise against Mr. Vasquez because of the continued harassment and recent truck incident.  Rather than taking any immediate action against Mr. Vasquez, Defendant instead sent Mr. Flores an letter (undated) requesting that Mr. Flores "identify issues that prompt fear or hostility in the workplace and address them directly to management as soon as they occur."  The letter included a memo entitled, "Personal Safety and Work Place Safety Plan for Earnest Flores."

21.     On or about March 5, 2010, Mr. Flores was terminated by Mr. Peralez for alleged "performance problems."

22.     Three days later on March 8, 2010, Mr. Flores received a call  from Defendant requesting that he come in that afternoon to discuss his situation. When Mr. Flores arrived at the meeting a security guard and the security director were also present.  At this meeting Mr. Flores was again terminated by Mr. Peralez.  Mr. Flores was advised that he had 24 hours to appeal his firing.

23.     Accordingly, Mr. Flores immediately appealed his termination.

24.     On or about March 10, 2010 Mr. Flores' appeal was heard and he was reinstated to his former position.

25.     Yet, on that same day Mr. Flores was issued a Third-Level Reminder Memo by his supervisor, Manuel Peralez.  Mr. Flores was advised that because of the Third-Level Reminder Memo he could be terminated for any reason.  Mr. Flores never received any formal reprimand prior to receiving this Third-Level Reminder.

26.     On March 11, 2010, Mr. Flores was placed under the supervision of Joseph "Joe" Rudolph, the Fire and Safety Supervisor.  Mr. Rudolph then promptly advised Mr. Flores that he (Mr. Rudolph) was going "take down" Mr. Flores.

27.     On March 12, 2010, Mr. Flores wrote a rebuttal to the Third-Level Reminder Memo and submitted it to the Texas Department of State Health Services human resource department.  In his rebuttal Mr. Flores set out all of the discrimination and retaliation he had endured at the workplace to that date.

28.     On March 31, 2010 and again on April 1, 2010, Mr. Flores was counseled for leaving a 30 pound container of Freon unsecured in the back of his state truck.  Mr. Flores is aware that none of the other employees were counseled for the same minor infraction.

29.     Mr. Rudolph held a meeting on April 5, 2010.  The meeting was behind locked doors with Santiago Garay, the newest supervisor of the Fire & Safety Department in attendance.  Mr. Rudolph informed everyone that whatever was said in the meeting would not leave the room. He then singled out Mr. Flores and questioned him about the accusations Mr. Flores had previously made about his co-workers.  He accused Mr. Flores of thinking he was better than everyone else.  At the end of the meeting Mr. Flores and Mr. Garcia were assigned to work exclusively as preventative maintenance workers.  Mr. Ibarra

and Mr. Leinneweber were assigned the more favorable task of working exclusively on service calls.

30.     On or about April 16, 2010, Mr. Flores was terminated again by Manual Peralez for allegedly failing to follow work rules and not properly handling a call.

31.      Mr. Flores asserts that he was subjected to retaliation after engaging in protected acts, i.e., complaining and reporting discrimination at the workplace, all in violation of Section 703(a) of Title VII, 42 U.S.C., section 2000e-2(a).

32.     Mr. Flores further asserts that Defendant created and/or allowed to be created a hostile work environment in which Mr. Flores was forced to work and was subjected to unwelcome pervasive and severe harassment of a racial and sexual nature and that affected a term, condition or privilege of his employment, and that Defendant knew or should have known of the harassment and failed to take prompt remedial action.  All of these actions and omissions, Ms. Garcia asserts were in violation of Chapter 21 of the Texas Labor Code.

33.   The effect of the practices complained of as stated above has been to deprive Ernest Flores of equal employment opportunities and to otherwise adversely affect his status as an employee, because of he complained about the discrimination directed toward him i.e., because of his participation in a protected activity.

34.     Plaintiff alleges that these practices by Defendants have caused him great emotional distress and mental anguish.

35.     Plaintiff further asserts that the unlawful employment practices by Defendants complained of herein were intentional and purposeful.

36.     Plaintiff further asserts that the unlawful employment practices by Defendants complained by Plaintiff were done so with malice or reckless indifference to him and his federally protected civil rights.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

1.      Order Defendant San Antonio State Hospital to make whole Ernest Flores, by providing appropriate back pay with prejudgment interest, in the amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the reinstatement of Ernest Flores and/or front pay.

2.      Order the Defendant San Antonio State Hospital, to make whole Ernest Flores, by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described in paragraphs twelve through thirty-four above, including, but not limited to, medical expenses, emotional pain, suffering, loss of enjoyment of life, and humiliation in amounts to be determined at trial;

3.      Order the Defendant San Antonio State Hospital, to remove all references of Plaintiff's termination from their Human Resources files;

4.      Grant such further relief as the Court deems necessary and proper; and

5.      Award attorneys fees for Plaintiff in this action.

### JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

DAVIS LAW FIRM
5710 IH 10 West

San Antonio, Texas 78201
(210) 734-3599 Telephone
(210) 785-0806 Telecopier

By: /s/ Mark Anthony Acuña
   MARK ANTHONY ACUÑA
   ATTORNEY IN CHARGE
   State Bar No. 24064044
   USDC WDT Bar No. 24064044
   ALAN BRAUN
   State Bar No. 24054488
   ATTORNEYS FOR PLAINTIFF,
   ERNEST FLORES